# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MINDY JAYE ZIED, | |
| Plaintiff, | CIVIL ACTION NO. 3:06-CV-1219 |
| v. | (JUDGE CAPUTO) |
| MICHAEL J. ASTRUE, COMM'R OF THE SOCIAL SECURITY ADMINISTRATION, | (MAGISTRATE JUDGE BLEWITT) |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court are Magistrate Judge Thomas M. Blewitt's Report and Recommendation (Doc. 37) and Plaintiff Mindy Jaye Zied's Objections thereto (Doc. 51). The Magistrate Judge recommended that the Court remand the case to the ALJ for further proceedings and deny Plaintiff's Motion for Sanctions (Doc. 31). For the reasons that follow, the Court will adopt the Magistrate Judge's Report and Recommendation, remand this case to the Administrative Law Judge for further proceedings consistent with this opinion, and deny Plaintiff's Motion for Sanctions (Doc. 31).

## BACKGROUND

This case is an appeal pursuant to 42 U.S.C. § 405(g) of a decision by the Commissioner of the Social Security Administration ("SSA"). (*See* Procedural Order for Social Security Appeals, Mar. 20, 2006, Doc. 4 in 06-1219 (Vanaskie, J.); Am. Compl., Doc. 13 in 06-1219). In her appeal, Plaintiff seeks review of the decision of the Commissioner that denied her request to reopen a prior application for disability insurance benefits ("SSDI") and reduced her award of supplemental security income

("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, 1381-1383f.  (*See* Doc. 37, at 1.)

The facts of this case are well-known to the parties and the Court.  Therefore, the Court will discuss only the facts relevant to the objections Plaintiff presently raises.  In 1995, Plaintiff filed an application for SSDI and SSI, which was denied initially and on reconsideration by the state agency.  (ALJ Decision, Sept. 21, 2004, at 1, R. at 12.)  Plaintiff did not request a hearing appealing this denial.  (Report and Recommendation, Doc. 37, at 1.)  Plaintiff indicates that she attempted to reopen this application in 1999 but that the state agency deemed this attempt to be a second, separate application.  (*See* Letter from Mindy Jay Zied-Campbell to Social Security Administration, Feb. 3, 2004, R. at 142.)  On the merits of that second application, the state agency determined that Plaintiff was disabled, and entitled to SSI benefits, as of March 12, 1999.  (*See* ALJ Decision, at 1, R. at 12.)  It denied her claim to SSDI benefits, however, because it determined that this claim concerned the same issues as her earlier, unsuccessful claim for DIB benefits in 1995, and that the facts relevant to her SSDI determination were unchanged: namely, the decision "that [Plaintiff] was not disabled . . . at any time on or before March 1982, the date [she] last had enough credits under Social Security to be insured for disability benefits" had not changed.  (*Id.* at 2, R. at 13; "Notice of Disapproved Claim," May 6, 1999, R. at 20.)

I.     **SSI Benefits**

In September 2001, Plaintiff and one of her children moved to a home in Pennsylvania owned by Plaintiff's mother in law, for which Plaintiff and her husband paid

2

rent of one dollar ($1.00), as well as paid homeowner's insurance, real estate taxes and utilities. (Report & Recommendation ["R&R"], Doc. 37, at 2, 7-8 (citing Agreement of Lease, R. at 291-92)). Plaintiff claimed that she paid more than one dollar ($1.00) in rent and her mother-in-law stated that she considered the payments of utilities and taxes, as well as completion of home repairs, to be "rent-like payment[s]." (*Id.* at 7-8.) In September 2002, Plaintiff's husband moved to Pennsylvania to join her. (*Id.* at 2 (citing "Statement of Claimant," Oct. 4, 2002, R. at 65)). Due to her reduced rent, which was deemed a "rental subsidy" and counted as income, Plaintiff's SSI was reduced by approximately one hundred eighty dollars ($180.00) between October 2001 and September 2002. (*Id.* at 2 (citing "Notice of Change in Payment," Nov. 25, 2001, R. at 288-89) and "How We Figured Your Payment For October 2002," Aug. 31, 2002, R. at 290)). In February 2004, the Agency denied Plaintiff's request for reconsideration of this reduction because it stated that she did not timely appeal it. ("Notice of Reconsideration," Feb. 12, 2004, R. at 116.) Plaintiff requested a hearing before an ALJ regarding this denial. (*See* "Appeal Request for Denial of Reconsideration," Feb. 16, 2004, R. at 123.)

In June 2001, Plaintiff's husband, who received a needs-based pension from the VA, began also receiving SSDI and SSI benefits, making Plaintiff eligible for spouse's benefits based on her husband's earnings records. (*Id.*; ALJ Decision, at 2, R. at 13.) Plaintiff was informed in February 2004 that, beginning September 2002, she was not eligible for SSI because of excess income from her husband's VA pension, but that if he voluntarily terminated his SSI, the Agency would recalculate Plaintiff's SSI retroactively to September 2002. (R&R, Doc. 37, at 2.) Plaintiff's husband did voluntarily terminate his

3

eligibility for SSI as of October 1, 2002.  (*Id.* at 3 (citing "Statement of Claimant," Feb. 3, 2004, R. at 108-09)).  As a result of this action, Plaintiff was informed she would receive a payment of retroactive benefits, but Plaintiff challenged the manner in which these retroactive benefits were calculated, specifically challenging that between the VA's calculation of benefits and the SSA's calculations, a certain amount of money was improperly being deducted twice.  (*See* "Appeal Request Before an A.L.J., Feb. 16, 2004, R. at 122.)

Both of these challenges to the calculation of Plaintiff's SSI benefit were before the ALJ, whose September 21, 2004 Decision determined that the SSI calculations had been made correctly.  (ALJ Decision, R. at 13-15.)  On Plaintiff's appeal, Magistrate Judge Blewitt determined that (1) "[t]here is substantial evidence that Plaintiff's SSI payments were correctly reduced due to her receipt of spouse's benefits between November 2002 and February 2004," but that (2) that ALJ "failed to address Plaintiff's receipt of reduced rent," and that "without the ALJ's discussion of this issue, we cannot determine if there was substantial evidence to support the ALJ's finding that Plaintiff's reduction of SSI was correct."  (R&R, Doc. 37, at 9-11.)  The Magistrate Judge recommended remanding the case to the ALJ for consideration of the issue of Plaintiff's rent payments between September 2001 and September 2002.  (*Id.* at 9.)

II.     **SSDI Benefits**

In February 2004, Plaintiff requested that the SSA reopen her 1995 application for SSDI benefits on the grounds that after this application was denied, Plaintiff lost mental

4

capacity to ask for reconsideration.  (Statement of Claimant, Feb. 3, 2004, R. at 110-11; Letter from Zied to SSA, R. at 142.)  The ALJ, while noting that such a request would normally be denied as untimely, considered Plaintiff's argument for an exception in light of Plaintiff's mental impairment and Social Security Ruling 91-5p.  (ALJ Decision, at 2, R. at 13.)  The ALJ concluded that despite Plaintiff's "long-term psychiatric history," the record did not show a treatment history from July 1974 through November 1995 and the record also revealed that Plaintiff was married and raising children without complaining of difficulty in doing so, that she had filed an appeal after the initial denial of her June 1995 applications was therefore "well aware of the appeal process," that she "has since filed several requests for reconsideration as well as a waiver of overpayment," and that she has submitted several "well-organized and detailed" briefs.  (*Id.* at 3, R. at 14.)  For these reasons, it denied her request to reopen the initial unfavorable SSDI determination.  (*Id.*)

On review, Magistrate Judge Blewitt noted that the ALJ did not specifically reference any medical opinions in determining that Plaintiff did in fact retain the mental capacity needed to properly appeal her initial denial of DIB benefits; in particular, the ALJ did not reference the June 2, 1999 opinion of Dr. Camellia P. Clark, in which Dr. Clark opined that every day since January 1, 1996, Plaintiff's mental health condition would have rendered her unable to file for her hearing.  (R&R, Doc. 37, at 16-17.)  Concluding that the ALJ's "cursory" statement that he "reviewed the medical record" was not sufficient and that "[w]ithout the ALJ's discussion of Dr. Clark's letter, we cannot determine if there was substantial evidence to support the ALJ's finding that Plaintiff was mentally capable of requesting a reopening of her application," Magistrate Judge Blewitt recommended remanding Plaintiff's appeal to the ALJ on this ground.  (*Id.* at 17.)

**III.     Plaintiff's Objections**

Plaintiff's objections are limited "to only the part of the Magistrates Report and Recommendation which recommends the granting of a remand, rather than plaintiffs' request to reverse and award her benefits." (Pl.'s Objections, Doc. 51, at 7.)  Specifically, Plaintiff's Objections address only the Magistrate Judge's recommendation that the case be remanded to the ALJ for further consideration of Dr. Clark's report in order to determine whether Plaintiff was mentally capable of requesting a reopening of her initial application for SSDI benefits.  These Objections are fully briefed and ripe for disposition.

**STANDARDS OF REVIEW**

**I.     Review of Magistrate Judge's Report and Recommendation**

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined

by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## II.     Review of Commissioner's Findings

The Commissioner's factual findings must be deemed conclusive unless the reviewing court finds they are not supported by substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is less than a large or considerable amount of evidence; it only requires enough relevant evidence that a reasonable mind might accept it as adequate to support a conclusion. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). Evidence is not substantial if it is overwhelmed by other evidence. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

## DISCUSSION

### I.     No Objections: Calculation of SSI Benefits and Motion for Sanctions

Plaintiff's Objections do not address the Magistrate Judge's recommendations (1) of a remand to consider whether the reduction in Plaintiff's SSI benefits between September 2001and September 2002, based on her reduced rent payments, was properly calculated; (2) of a determination that there was substantial evidence that the reduction in her SSI benefits between November 2002 and February 2004, based on her

receipt of spouse's benefits, was properly calculated; or (3) that Plaintiff's Motion for Sanctions against the Defendant and defense attorneys (Doc. 31) be denied (*see* R&R, Doc. 37, at 18 n.2). Upon review of these recommendations for plain error or manifest injustice, the Court will adopt these portions of the Report and Recommendation.

## II.     Plaintiff's Objection to Remand for Consideration of Dr. Clark's Opinion in Relation to Reopening SSDI Application

Because Plaintiff's 2004 request to reopen her 1995 application occurred more than four (4) years after the initial decision, Plaintiff can reopen the initial decision, under 20 C.F.R. § 404.988(c)(1), only if "[i]t was obtained by fraud or similar fault." This regulation refers to 20 C.F.R. § 416.1488(c) "for factors which we take into account in determining fraud or similar fault." *Id.* Those factors include "any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you [the claimant] may have had at the time." 20 C.F.R. § 416.1488(c).

However, "[i]t has always been SSA policy that failure to meet the time limits for requesting review is not automatic grounds for dismissing the appeal and that proper consideration will be given to a claimant who presents evidence that mental incapacity may have prevented him or her from understanding the review process." Social Security Ruling 91-5p, POLICY INTERPRETATION RULING TITLES II AND XVI: MENTAL INCAPACITY AND GOOD CAUSE FOR MISSING THE DEADLINE TO REQUEST REVIEW [hereinafter "SSR 91-5"]. This Policy Interpretation Ruling takes note of a number of regulations, including § 404.988, that establish deadlines for requesting review of agency decisions, but then

provides that if "a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, . . . and the claimant had no one," such as an attorney, "legally responsible for prosecuting the claim at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review." SSR 91-5p. In accordance with this policy interpretation, "[i]f the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply" and "the claimant can establish good cause for extending the deadline to request review," "regardless of how much time has passed since the prior administrative action." *Id.*

Ruling 91-5p provides that a claimant establishes "mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review." The Magistrate Judge has recommended remand on this question for further consideration of Dr. Clark's opinion. Plaintiff argues, however, that remand, rather than reversal of the ALJ's decision and award of SSDI benefits, would serve no purpose and only delay her benefit award because the record is clear as to what Plaintiff's mental impairments are and no additional evidence is needed to demonstrate that she was disabled since 1972. (Objections, Doc. 51, at 6.)

Defendant responds that reversal and award of disability benefits is not appropriate because the issue under consideration here is not the substantive disability determination but rather, whether Plaintiff had the mental ability to request a reopening of her case for SSDI benefits. (Def.'s Response, Doc. 52, at 4.) "This procedural issue must be determined before a substantive disability determination can be made on the

9

prior application," Defendant submits. (*Id.*)

A district court reviewing a decision of the Commissioner of Social Security may affirm, modify, or reverse the decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court should elect to order the award of benefits without a remand "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." *Gilliand v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986) (citing *Podedworny v. Harris*, 745 F.2d 210, 221-23 (3d Cir. 1984)). On such records, "it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delays in the receipt of benefits." *Id.* at 185.

Notably, in all the cases Plaintiff cites in support of remand, the issue was the plaintiff's substantive disability determination, unlike the case here. But even to the extent that the question of Plaintiff Zied's mental capacity to appeal her initial SSDI denial is comparable to the disability determinations in the cases Plaintiff cites, those cases are nonetheless distinguishable. For example, the Court in *Gilliand* chose to remand because "substantial and uncontradicted evidence" in the record established that the claimant was disabled. *Id.* The Third Circuit Court of Appeals also held that *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1163 (3d Cir. 1988), was "an appropriate case for the exercise of our prerogative to direct an award of benefits," because "[e]ight years of administrative and judicial proceedings have produced a record in which the *uncontradicted* medical and lay evidence demonstrates that Woody suffers

from a mental impairment and that that impairment has had a devastating impact on his ability to function in society." *Id.* at 1162.  While directing an award of benefits was appropriate "[u]nder these circumstances," the court in *Woody* noted by contrast that "[i]f the only problem in this case were the ALJ's failure to meaningfully address the issue concerning the vocational impact of Woody's mental state, we would, of course, remand for further proceedings." *Id.*  Additionally, in *Morales v. Apfel*, the Third Circuit Court of Appeals chose to direct an award of benefits without remand because "the extensive medical record, wrongly rejected by the ALJ, is substantial evidence that Morales suffers from a severe mental disability that renders him unable to engage in substantial gainful activity."  225 F.3d 310, 320 (3d Cir. 2000); *see also Mademann v. Astrue*, No. 06-CV-3064, 2008 WL 375760, at *2 (E.D. Pa. Feb. 11, 2008) (directing an award of benefits where there was substantial evidence on the record as a whole that the claimant, who had since died, was disabled); *Monagle v. Astrue*, No. 06-CV-3911, 2007 WL 2571453, at *4 (E.D. Pa. Aug. 24, 2007) (directing an award of benefits where there were "no remaining evidentiary question . . . because the consultative expert and plaintiff's treating physician agree that plaintiff is disabled, and the testifying expert agreed that the plaintiff suffered from bipolar disorder, but could not separate plaintiff's bipolar disorder from his drug use;" because the evidence was unlikely to change; and because "[a]ll that remains is proper application of the relevant rules and regulations, which is within the purview of this Court's authority under 42 U.S.C. § 405(g)").

Here, by contrast, the evidence of Plaintiff's mental incapacity to timely appeal her initial SSDI denial is not uncontradicted.  Indeed, both the ALJ and the Magistrate Judge

11

pointed to a number of factors – including the fact that Plaintiff has filed appeals, motions for reconsideration, and numerous other filings, including organized briefs, throughout the course of this litigation – that weigh against the evidence of her incapacity.  Plaintiff argues that these factors are merely "assumptions," that are "not based upon the substantial evidence in the record, or facts or records, including medical, which were before the ALJ."  (Pl.'s Reply. Br., Doc. 55, at 4.)  However, "[t]he determination as to what constitutes mental incapacity must be based on *all the pertinent facts* in a particular case."  SSR 91-5p (emphasis added).  While the adjudicator must "resolve any reasonable doubt in favor of the claimant," *id.*, Plaintiff points to no authority limiting the types of facts the adjudicator may consider.

Additionally, not only is the evidence of Plaintiff's mental incapacity not uncontradicted, there is not, at this point, substantial evidence in the record that Plaintiff "lacked the mental capacity to understand the procedures for requesting review."  *See id.*  While this Court agrees with the Magistrate Judge's determination that without the ALJ's discussion of Dr. Clark's letter, "we cannot determine if there was substantial evidence to support the ALJ's finding that Plaintiff was capable of effecting a timely appeal," this conclusion does not mean that there is substantial evidence of the inverse proposition: that she was incapable of doing so.

In light of the other factors previously identified, this is not a case like *Monagle*, in which "there is no question, based upon the complete record, that [the claimant] would have been eligible for benefits had the ALJ properly applied the test required by the Commissioner."  2008 WL 2571453, at *4 (internal quotation marks omitted).  Instead, if

12

the ALJ properly considered all evidence, even including Dr. Clark's opinion, there still would remain a question whether the ALJ would find that Plaintiff was capable of understanding the procedures for timely requesting review.  This case is more like the situation mentioned by contrast by the *Woody* court, in which the ALJ failed to meaningfully address an issue: namely, Dr. Clark's report.  As such, remand for further consideration is the appropriate outcome.  *See id.* at 1162.

## CONCLUSION

After careful consideration, the Court will adopt the Magistrate Judge's Report and Recommendation (Doc. 37).  Therefore, Plaintiff's Motion for Sanctions (Doc. 31) will be denied and Plaintiff's appeal will be remanded to the Administrative Law Judge for further consideration of (1) the amount of rental subsidy Plaintiff received between September 2001 and September 2002 and the appropriate effect of this subsidy on the reduction of her SSI benefits, and (2) Dr. Clark's report and other medical opinions as they bear on the reopening of her 1995 application for SSDI benefits.

An appropriate Order follows.


June 13, 2008                                             /s/ A. Richard Caputo
Date                                                             A. Richard Caputo
                                                                   United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MINDY JAYE ZIED, | |
| Plaintiff, | CIVIL ACTION NO. 3:06-CV-1219 |
| v. | (JUDGE CAPUTO) |
| MICHAEL J. ASTRUE, COMM'R OF THE SOCIAL SECURITY ADMINISTRATION, | (MAGISTRATE JUDGE BLEWITT) |
| Defendant. | |

## ORDER

**NOW**, this  13th  day of June, 2008, upon review of Magistrate Judge Thomas M. Blewitt's Report and Recommendation (Doc. 37), **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Objections (Doc. 51) to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

(2) The Report and Recommendation (Doc. 37) is **ADOPTED**.

(3) Plaintiff's Motion for Sanctions (Doc. 31) is **DENIED**.

(4) This case shall be **REMANDED** to the Administrative Law Judge for further proceedings consistent with this opinion.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge